OPINION OF THE COURT
Philip C. Modesto, J.
This is a commercial nonjury holdover summary proceeding brought on for trial before this court. The case was tried over a period of four days commencing on July 7, 1987. This decision constitutes the findings of fact and conclusion of law as required pursuant to CPLR 4213 (b).
The petition seeks, inter alia, a final judgment awarding possession of the premises to the petitioner. It alleges that the respondent is a holdover tenant, its lease having expired on March 31, 1987. The premises in question are the second and third floors of building WH-1 located in the Bronx Terminal Market in Bronx County. The petition further alleges that the respondent has continued in possession of the premises without the permission of the landlord, or of the petitioner, after the expiration of the lease term. The amended answer alleges, in relevant part, that the petition was not properly verified, and that the petitioner lacks the legal capacity to bring and maintain the summary proceeding. It also contains denials as to the petitioner’s allegation of the petitioner’s corporate status, the fact of lease existence and expiration and the situs of the premises involved. The answer also contains an affirmative defense alleging that the respondent occupies the premises pursuant to a valid rental agreement and that the term of that lease has not yet expired.
*56 THE FINDINGS OF FACT
The court having heard all of the evidence and reviewed and examined all of the relevant documents and exhibits makes the following findings of fact.
It has been indubitably established that the petitioners are the landlord and its leasee and that as such they are entitled to bring this holdover proceeding. (RPAPL 721 [1], [10].) It has also been established that the respondent leased the premises in question on or about January 1, 1987 under a written agreement with the petitioner Arol Development Corporation, the landlord herein. The premises in question are as herein-above described.
The disputed facts concern the issue of when did the January 1, 1987 lease between the petitioner landlord and the respondent expire?
The court finds that the respondent and the petitioner Arol Development Corp. did in fact enter into a written lease for the premises in question. That lease was dated January 1, 1987 and provided that its expiration date was February 15, 1987. This lease term was extended until March 31, 1987 and the rent for the extension was paid by check dated February 9, 1987. The letter seeking the extension in writing was never signed by the landlord or its agents. On February 10, 1987 and March 11, 1987 the respondent’s attorney sent separate letters to Arol Development Corp. which show, inter alia, that no long-term lease between the parties had as yet been entered into as of said dates. On March 18, 1987 another letter was mailed to the landlord from the respondent which sought further to extend the lease from March 31, 1987 up to and including September 30, 1987. A check for the April 1987 rent was enclosed therewith. A follow-up letter from the respondent’s attorney on March 19, 1987 to the landlord clearly shows that the original lease had as yet not been extended beyond the March 31, 1987 expiration date. On March 30, 1987 the landlord and its attorney notified the respondent that the landlord did not wish to extend the lease beyond March 31, 1987. In fact the respondent’s letter dated April 1, 1987 addressed to the landlord clearly demonstrates and shows that the respondent as of that date knew that an extension agreement beyond March 31, 1987 did not exist.
The oral testimony of respondent’s witnesses attempted to show that an oral agreement had been reached between the landlord and the respondent wherein the lease was to be *57 extended to at least September 30, 1987 and that in fact the parties had contemplated a long-term lease. This oral testimony was vigorously and directly contradicted by the landlord’s corporate president. The court in light of the evidence as adduced and the documentary evidence as produced is constrained to conclude that no written extension of the January 1, 1987 lease beyond March 31, 1987 exists. Also that no agreement (oral or written) was ever made between the parties for a long-term lease. It is axiomatic that mere negotiations do not constitute binding agreements. The respondent is attempting by its evidence to bind the landlord to a lease agreement beyond March 31, 1987 when in fact no conclusive or probative evidence in support of that proposition exists. The evidence clearly shows that the respondent is a large corporation totally sophisticated in the business world and that it operates and conducts businesses at many other locations throughout the country. Its representative, Mr. Knoll, admitted that he has personally handled at least five separate lease negotiations during the last five years. He also admitted that when his company purchased the assets of the predecessor tenant for the premises it knew that they were buying the assets only and that no lease existed to cover the premises. All throughout the negotiations for the purported lease extension and/or long-term lease the respondent was represented by counsel. The attorneys knew that no written lease and/or extension beyond March 31, 1987 existed and repeatedly attempted to obtain the landlord’s agreement for said extension and/or long-term lease.
The evidence further clearly demonstrated that the landlord, Arol Development Corp., entered into a new lease with the petitioner, Metro Spanish Food Wholesalers, Inc., on March 31, 1987. Also that this new lease was for the same premises as the previous lease between the landlord and the respondent. The commencement date for the new lease is April 1, 1987. The monthly rental for the premises is greater than that being paid by the respondent under the terms of its expired lease. The existence of this new lease has not been successfully controverted by the respondent.
During the trial several motions were made by the respondent which this court will address at this time. The first of these motions was to dismiss the petition because the petition was filed in court on April 1, 1987 and the notice of petition and an exhibit B thereto were filed on April 2, 1987 (one day later). It is alleged that this separate filing of the *58 petition and the notice of petition and exhibit on separate dates is a jurisdictional defect which mandates dismissal. RPAPL 735 (2) provides that
"The notice of petition * * * and petition together with proof of service * * * shall be filed with the court or clerk thereof within three days after;
"(a) personal delivery to respondent, when service has been made by that means, and such service shall be complete immediately upon such personal delivery”.
The service of the petition and notice of petition was personally made upon the respondent’s general manager on April 1, 1987. The issue of the appropriateness of that personal service was already resolved by another Judge of this court. It has been established that the service was made on April 1, 1987 and that the filing of the petition in court took place on April 1, 1987 and the notice of petition and exhibit B were filed in court on April 2, 1987. This court holds that the section 735 does not require that the petition and notice of petition and exhibits thereto be filed simultaneously and that failure to do so is not a jurisdictional defect but rather merely a ministerial defect which can be corrected nunc pro tunc or sua sponte by the court at any time during the proceedings. All the relevant pleadings and exhibits herein were filed with the clerk within three days of service as required by the statute. (Eiler v North, 121 Misc 2d 539 [1983]; Billglo Corp. v Haskins, 111 Misc 2d 512 [1981].) The court notes further that CCA 411 allows for the late filing nunc pro tunc of a notice of petition and petition if the need therefor were called for in this proceeding. However since the papers were all filed within the three-day period called for under RPAPL 735 the dictates of CCA 411 are not needed. Consequently the motion to dismiss the petition and notice of petition because they were not filed together on either April 1, 1987 or April 2, 1987 is denied in that they were both filed within the three days called for in RPAPL 735. The fact that they were filed separately is not jurisdictionally defective.
A second motion to dismiss the petition made during trial was addressed to the appropriateness of the verification of the petition. The petition is verified by John Torres and Constance A. Testa without identification as to their titles and/or corporate position. On the face of the petition immediately above the paragraph for the verification both Mr. Torres and Miss Testa are identified as the president of the petitioner Metro *59 Spanish Food Wholesalers, Inc. and as secretary of the petitioner Arol Development Corp., respectively.
The court finds that the failure to identify the signatories by their corporate positions is not fatally defective. RPAPL 741 provides in pertinent part that “The petition shall be verified by the person authorized by section seven hundred twenty-one to maintain the proceeding; or by a legal representative, attorney or such person pursuant to subdivision (d) of section three hundred twenty of the civil practice law and rules.” Since Mr. Torres and Miss Testa are corporate officers of the respective petitioners they are empowered to sign on behalf of their corporate entities. The fact that their titles were not shown beneath or adjacent to their signatures is not fatally defective. They are both identified on the face of the petition and their respective offices in their respective corporations are clearly shown. (See, City of New York v Brown, 119 Misc 2d 1054, and cases cited thereat.) The defect is clearly de minimis and is nonprejudicial to the respondent.
The respondent’s third motion to dismiss contends that since the respondent may be construed to be a month-to-month tenant the mandates of section 232-a of the Real Property Law require that it be served with a 30-day notice to terminate before any holdover summary proceeding could be commenced against the respondent. A month-to-month tenant is defined in section 232-c of the Real Property Law as one whose term is longer than one month and who holds over after the expiration of such term and who pays rent accepted by the landlord for a period subsequent to the expiration of the term. A further condition is that if the rent is paid after the expiration of the term and accepted under an agreement to the contrary no month-to-month tenancy can be created. In this case when the lease term expired on March 31, 1987 no month-to-month tenancy was created because no rent was accepted by the landlord from the tenant for a period of time subsequent to March 31, 1987. The only other period of time for which a month-to-month tenancy could have come into existence is for the period of time after February 15, 1987. While the landlord did accept rent after February 15, 1987 it was with the clear understanding that it was only for a period of time up to March 31, 1987. This acceptance of the rent with the understanding that the extension was only for another 45 days clearly prevented the creation of a month-to-month tenancy.
Since no month-to-month tenancy existed there was no *60 requirement for the 30-day notice provided for under section 232-a of the Real Property Law. The motion to dismiss on this ground is denied.
For the foregoing reasons the court finds for the petitioners and hereby orders and directs that a judgment be entered directing that the petitioners be awarded possession of the premises forthwith. A warrant shall be issued directed to a marshal to remove the respondent from the premises. The issuance of the warrant shall be stayed to and including October 31, 1987. The respondent is to pay use and occupancy at a rate of $44,666 per month until that time.